UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DARNELL DUKES, | ) | Civil No. 09-CV-1463-L(WVG) |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION ON** |
| | ) | **DEFENDANTS' MOTION FOR SUMMARY** |
| v. | ) | **JUDGMENT** |
| | ) | |
| K SPENCE, ET AL., | ) | [DOC. NO. 39] |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the Court is a Motion for Summary Judgment on behalf of defendants Spence, Smith, and Ponce (collectively, "Defendants").[1/] (Doc. No. 39.) Defendants claim immunity from suit and argue that they did not violate Plaintiff's Eighth Amendment rights because they either did not use force or the force they used was reasonable. The undersigned agrees and RECOMMENDS that Defendants' motion be GRANTED.

/ / /

/ / /

/ / /

_____

[1/]     The remaining defendants, Jones, Clegg, Blakee, and Stricklin, do not move for summary judgment at this time, as they concede that whether they used excessive force on Plaintiff is a jury question.

09CV1463

## I.  FACTUAL BACKGROUND[2/]

**A.     General Factual Background Based on The Complaint and Plaintiff's Deposition**

Plaintiff, Darnell Dukes, is a California state prisoner who is serving a life sentence for a kidnap for ransom conviction.  On June 10, 2007, Plaintiff was housed at the R. J. Donovan Correctional Facility ("RJD") in San Diego, California.  (Doc. No. 39-3 at 8.)[3/]  On that day, Plaintiff was involved in a fight with another inmate, Frison, as they walked to church services.  (<u>Id.</u> at 10.)  Defendant Correctional Officer Smith was on duty and ordered both combatants to get down on the ground, as was the standard protocol.  (<u>Id.</u> at 12.)  All other inmates on the yard complied with this order.  (<u>Id.</u> at 14.)  Plaintiff understood that Smith's order meant that he was to lay down on his stomach on the ground.  (<u>Id.</u> at 12-13.)  However, neither Plaintiff nor inmate Frison complied.  (<u>Id.</u>)  Instead, they both crouched down in anticipation of the other's continued attack.  (<u>Id.</u> at 14-15.)  Defendant Smith claims he approached Frison and shoved him to the ground.  (Doc. No. 39-6 at 2.)  As soon as he did so, Smith claims that Plaintiff lunged onto Frison and continued the fight.  (<u>Id.</u>)  While admitting the lunged at Frison, Plaintiff claims he and Frison lunged at each other simultaneously.  (Doc. No. 39-3 at 16-17.)  In any event, Smith sprayed Plaintiff in the face with pepper spray.  (<u>Id.</u> at 17-18.)  Plaintiff, who had been in "more than a few" prison fights in the

_____

[2/]    The factual background is largely adapted from Defendants' motion. Much of the facts are undisputed.  Where facts are disputed, the undersigned will state so.

[3/]    All page references to documents contained on the Court's docket are to the Court Clerk's renumbered pages, not the document's native pagination.

09CV1463

1   past, understood that he would be pepper-sprayed if he did not

2   comply with Smith's orders. (Id. at 19.)

3        By this point, other officers had arrived at the scene.

4   Plaintiff claims he was walking backwards and trying to get on the

5   ground. (Id. at 18.) Defendants assert that Plaintiff was trying

6   to run away and fought the officers who tried to take him into

7   custody. (Doc. No. 1-1 at 18-19; Doc. No. 39-6 at 2.) In any

8   event, an officer struck Plaintiff with a baton several times.

9   (Doc. No. 48-2 at 6.) Plaintiff claims that several unidentified

10  officers then "flopped" onto him, took him to the ground, and

11  handcuffed him. (Id. at 8; Doc. No. 1 at 4-5.) He claims he was

12  beaten after he was handcuffed and claims he did not struggle as he

13  was being handcuffed. (Doc. No. 1 at 4-5; Doc. No. 48-2 at 7-8.)

14       Plaintiff was then escorted to the "program office," to

15  discuss the fight, was then taken to the medical office for

16  evaluation and treatment, and then was placed in administrative

17  segregation. (Doc. No. 39-3 at 20-21.)

18  **B.   Plaintiff's Original Allegations Against Defendants Based on
        The Complaint And Plaintiff's Deposition**

19

20       **1.   Allegations Against Defendant Smith**

21       Plaintiff's Complaint alleges that Smith should not have

22  sprayed him with pepper spray. (Doc. No. 1 at 4 ("K. Smith . . .

23  sprayed Plaintiff with pepper spray[,] which was totally unneces-

24  sary.").) Defendant further alleges that Smith participated in

25  Plaintiff's beating and participated by kicking, dragging, and

26  punching him. (Id.) However, at deposition, Plaintiff stated he

27  did not know who was attacking him. (Doc. No. 48-2 at 6, 10.)

28  Plaintiff also stated that he did not believe he should have been

1  sprayed in the first place, or that at least both he <u>and</u> Frison

2  should have been sprayed - not just Plaintiff.   Thus, the only

3  wrongful conduct Plaintiff primarily assigned to Smith was the very

4  act of spraying pepper spray, an act which Smith does not dispute.

5  (Doc. No. 39-3 at 32 ("Q:  So as I understand your testimony, the

6  only claim you're making against Smith in this lawsuit is that he

7  pepper-sprayed you and he shouldn't have, correct?  A:  Yes.").)

8              2.   <u>**Allegations Against Defendant Ponce**</u>

9       Defendant Ponce is a correctional officer at RJD and was

10  present on the day of Plaintiff's fight.   Ponce prepared a report

11  that detailed his involvement in the incident:  he arrived at the

12  scene, other officers handcuffed Plaintiff, and Ponce escorted

13  Plaintiff away without ever using force on him. (Doc. No. 1 at 17

14  (incident report); <u>see also</u> Doc. No. 39-5 at 2.).

15       Without providing any basis for his belief, Plaintiff's

16  Complaint makes the conclusory allegation that Ponce was involved in

17  the alleged beating after he was handcuffed.  (<u>Id.</u> at 4 ("Defen-

18  dant's [sic] B. Jones and J. Ponce where [sic] both involved in the

19  illegal beating of Plaintiff.")  This is the only statement in

20  Plaintiff's Complaint that resembles a factual allegation against

21  Ponce.

22       At deposition, Plaintiff stated that Ponce was present while

23  Plaintiff fought Frison but admitted that Ponce did not lay a hand

24  on Plaintiff. (Doc. No. 39-3 at 28 (Q:  . . . Other than that, so

25  that Ponce's report is wrong, what did Ponce do?  Did he lay hands

26  on you during the fight?  A:  No.").)

27       Plaintiff then quickly turned the discussion to Ponce's

28  incident report, which he claimed was falsified to help a fellow

1   officer.  (Id. at 27.)  This allegation appeared nowhere in the

2   Complaint.  Specifically, Ponce allegedly lied about who escorted

3   Plaintiff.  Plaintiff claimed another officer, Jones, escorted him,

4   while Ponce's report stated that Ponce escorted Plaintiff.  (Id. at

5   28.)  Regardless of who escorted Plaintiff away from the fight

6   scene, Plaintiff stated that whoever escorted him did not "harm" him

7   in any way.  (Doc. No. 48-2 at 14.)  That officer merely warned

8   Plaintiff not to spit on him as Plaintiff was trying to spit out the

9   pepper spray.  (Id.)  Plaintiff initially interpreted this warning

10  as a threat but could not explain how it was a threat at deposition.

11  (Id.)

12       Then, seemingly contradicting his earlier statement that

13  Ponce never laid hands on him, Plaintiff stated that he "believed"

14  Ponce "flopped" on him, meaning that Ponce "threw" himself on

15  Plaintiff as other officers tried to take him into custody.  (Doc.

16  No. 39-3 at 29.)  This allegation also appears nowhere in the

17  Complaint.  When asked why he believed Ponce "flopped" on him,

18  Plaintiff essentially admitted that he had no factual basis for this

19  belief:

20       Q.   . . .  And did you see him do that?  Other than
              saying he's a big guy, did you see him do that?
21       A.   I mean, it's common sense.  He's the biggest guy
              out there.
22       Q.   I didn't ask you about common sense.  I asked you
              a really specific question:  Did you see him do it?
23       A.   No.  But, I mean, I –
         . . . .
24       Q.   Did you hear his voice at the time of the alterca-
              tion?
25       A.   No, I did not, I don't believe.  I don't recall.

26  (Id. at 29-30.)

27

28

### 3.   Allegations Against Defendant Spence

Lieutenant Spence was the supervisor who investigated the fight, the officers' use of force, and who prepared an incident report after interviewing the involved officers and inmates. (Doc. No. 1 at 14 (incident report).) Plaintiff alleges Spence is liable because he failed to stop the correctional officers' falsification of their reports. (Id. at 5 ("Defendant K. Spence failed in this regard because he allowed all named Defendant's [sic] to cover-up [sic] their illegal actions and in the attempt to change and falsify medical reports.").) Plaintiff initially made no other allegations against Spence.

At deposition, Plaintiff admitted that Spence was not physically present when Plaintiff claimed he was beaten and did not know whether Spence ever "attacked" him. (Doc. No. 39-3 at 22, 26.) He agreed that he sued Spence only because "he was the overseer of everything, an that he approved the incident reports that were sent to Sacramento." (Id. at 23.) He confirmed these were the only bases for his suit against Spence and mentioned no other allegedly improper conduct by him. (Id.)

### C.   Plaintiff's New Factual Allegations And Theories

Plaintiff raises the following new factual allegations and theories of liability in his opposition to Defendants' motion for the first time since filing his Complaint on July 6, 2009, including during his deposition on April 21, 2010. In his opposition to the instant motion, Plaintiff agreed "fully with Defendants [sic] statement of undisputed facts with exception to the Defendants [sic]

09CV1463

1    exclusion of" the new allegations summarized below.[4/]  (Doc. No. 45

2    at 5.)

3             **1.   New Theory Against Defendant Smith**

4         Plaintiff now alleges:  "The number of bursts from Smith's

5    O.C. aerosal [sic] canister has never been in dispute.  It is in

6    dispute however the duration of the single burst, a duration that

7    the Court may note has never been calculated by Defendants and by

8    which Plaintiff estimates as 7-10 seconds and excessive in light of

9    the attendant circumstances." (Doc. No. 45 at 7 (all-caps font

10   removed).)  Plaintiff now disputes the <u>duration</u> of time he was

11   sprayed in addition to his original allegation that he should not

12   have been sprayed in the first place.

13            **2.   New Theory Against Defendant Ponce**

14        Also for the first time, Plaintiff now argues that Ponce, as

15   the officer who escorted him away from the fight scene, "assumed the

16   responsibility for ensuring that Plaintiff was afforded ample

17   opportunity to decontaminate after becoming knowledgeable that

18   Plaintiff was suffering from the after effects of pepper spray

19   exposure." (Doc. No. 45 at 7-8.)

20            **3.   New Theory Against Defendant Spence**

21        Plaintiff now alleges that Spence, as a supervisor, "retained

22   a corresponding duty to ensure that proper decontamination was given

23   to alleviate the unnecessary and wanton infliction of pain,

24   suffering[,] and agony opposed [sic] to merely assuming that proper

25   decontamination would be provided."  (<u>Id.</u> at 6 (all-caps font

26   removed).)  Plaintiff's new theory against Spence is based solely on

27   

28   _____
     [4/]    It should be of no surprise to Plaintiff that Defendants "excluded"
             these theories since they appear for the first time in his
             opposition to their motion.

                                       7                          09CV1463

1    his supposed failure to ensure that Plaintiff received sufficient

2    water shortly after being pepper-sprayed.  Again, this new allega-

3    tion was absent from the Complaint, and Plaintiff failed to mention

4    it in his deposition when he was asked whether he sued Spence for

5    any reason other than his supposed failure to stop the falsification

6    of reports and to prevent the alleged coverup.  (See Doc. No. 39-3

7    at 23.)

8                     **II.   LEGAL STANDARD**

9    **A.     Motions for Summary Judgment**

10         Federal Rule of Civil Procedure 56(a) mandates the grant of

11   summary judgment "if the movant shows that there is no genuine

12   dispute as to any material fact and the movant is entitled to

13   judgment as a matter of law."  The standard for granting a motion

14   for summary judgment is essentially the same as for the granting of

15   a directed verdict.  Judgment must be entered "if, under the

16   governing law, there can be but one reasonable conclusion as to the

17   verdict."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51

18   (1986).  However, "[i]f reasonable minds could differ," judgment

19   should not be entered in favor of the moving party.  Id.; see also

20   Blankenhorn v. City of Orange, 485 F.3d 463, 470 (9th Cir. 2007)

21   ("If a rational trier of fact might resolve the issue in favor of

22   the nonmoving party, summary judgment must be denied.") (alteration

23   omitted).

24         The parties bear the same substantive burden of proof as

25   would apply at a trial on the merits, including Plaintiff's burden

26   to establish any element essential to his case.  Anderson, 477 U.S.

27   at 252; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Lack of

28   a genuine issue of material fact on a single element of a claim for

1   relief is sufficient to warrant summary judgment on that claim.

2   Celotex Corp., 477 U.S. at 322-23.

3       The moving party bears the initial burden of identifying the

4   elements of the claim in the pleadings, or other evidence, and

5   "'showing' -- that is, pointing out to the district court -- that

6   there is an absence of evidence to support the nonmoving party's

7   case." Id. at 325; see also Fed. R. Civ. P. 56(c). "A material

8   issue of fact is one that affects the outcome of the litigation and

9   requires a trial to resolve the parties' differing versions of the

10   truth." S.E.C. v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir.

11   1982).

12       The burden then shifts to the nonmoving party to establish,

13   beyond the pleadings, that there is a genuine dispute for trial.

14   Celotex Corp., 477 U.S. at 324. To successfully rebut a properly

15   supported motion for summary judgment, the nonmoving party "must

16   point to some facts in the record that demonstrate a genuine issue

17   of material fact and, with all reasonable inferences made in the

18   plaintiff[]'s favor, could convince a reasonable jury to find for

19   the plaintiff[]." Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d

20   736, 738 (9th Cir. 2000) (citing Rule 56; Celotex Corp., 477 U.S. at

21   323; Anderson, 477 U.S. at 249).

22       "When opposing parties tell two different stories, one of

23   which is blatantly contradicted by the record, so that no reasonable

24   jury could believe it, a court should not adopt that version of the

25   facts for purposes of ruling on a motion for summary judgment."

26   Scott v. Harris, 550 U.S. 327, 380 (2007).

27

28

**B.      Special Rules Applicable to *Pro Se* Plaintiffs**

"The Supreme Court has instructed the federal courts to liberally construe the inartful pleading of pro se litigants. It is settled that the allegations of [a pro se litigant's complaint] however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers." <u>Eldridge v. Block</u>, 832 F.2d 1132, 1137 (9th Cir. 1987) (citation and internal quotations omitted; alteration in original).

This rule, however, "applies only to a plaintiff's factual allegations." <u>Neitzke v. Williams</u>, 490 U.S. 319, 330 n.9 (1989). "'[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.'" <u>Bruns v. Nat'l Credit Union Admin.</u>, 122 F.3d 1251, 1257 86 (9th Cir. 1997) (quoting <u>Ivey v. Bd. of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982)); <u>see also</u> <u>Pena v. Gardner</u>, 976 F.2d 469, 471 (9th Cir. 1992) (same) (per curiam).

Although the Court must construe pleadings liberally, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." <u>King v. Atiyeh</u>, 814 F.2d 565, 567 (9th Cir. 1987); <u>see also</u> <u>Ghazali v. Moran</u>, 46 F.3d 52, 54 (9th Cir. 1995) (same) (per curiam).

## III.   DISCUSSION

**A.      Defendants Are Entitled to Summary Judgment**

Defendants argue that they are entitled to summary judgment because Plaintiff cannot establish that they violated his Eighth Amendment rights. As explained below, the undersigned agrees.

09CV1463

1      **1.    Legal Background:  The Eighth Amendment**

2          "[W]henever prison officials stand accused of using excessive

3      physical force in violation of the [Eighth Amendment], the core

4      judicial inquiry is . . . whether force was applied in a good-faith

5      effort to maintain or restore discipline, or maliciously and

6      sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7

7      (1992).   Where prison officials have acted in response to an

8      immediate disciplinary need, because of the risk of injury to

9      inmates and prison employees and because prison officials will not

10     have time to reflect on the nature of their actions, the "malicious

11     and sadistic" standard, as opposed to the "deliberate indifference"

12     standard, applies.  See Whitley v. Albers, 475 U.S. 312, 320-21

13     (1986).

14         Because the use of force relates to the prison official's

15     legitimate interest in maintaining security and order, the Court

16     must be deferential when reviewing the necessity of using force.

17     See id. at 321-22.  In order to establish excessive force, the

18     plaintiff needs to meet a threshold of evidence.  Where evidence of

19     excessive force is "woefully sparse," the plaintiff fails to raise

20     a dispute of fact regarding an excessive force claim. Henderson v.

21     City of Simi Valley, 305 F.3d 1052, 1061 (9th Cir. 2002). Addition-

22     ally, the failure to deny allegations of non-cooperation that would

23     justify increased force can support a grant of summary judgment

24     against the plaintiff.  Arpin v. Santa Clara Valley Transp. Auth.,

25     261 F.3d 912, 922 (9th Cir. 2001).

26         When determining whether the force is excessive, the Court

27     should look to the "(1) the extent of injury suffered by an inmate;

28     (2) the need for application of force; (3) the relationship between

                                      11                              09CV1463

that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response."  <u>Hudson</u>, 503 U.S. at 7 (quoting <u>Whitley</u>, 475 U.S. at 321).  Although the Supreme Court has never required a showing that an emergency situation existed, "the absence of an emergency may be probative of whether the force was indeed inflicted maliciously or sadistically."  <u>Jordan v. Gardner</u>, 986 F.2d 1521, 1528 n.7 (9th Cir. 1993).

Moreover, there is no need for a showing of a serious injury as a result of the force, but the lack of such an injury is relevant to the inquiry.  <u>See</u> <u>Hudson</u>, 503 U.S. at 7-9 ("[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation, 'or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'") (quoting <u>Whitley</u>, 475 U.S. at 321.).

**2.  <u>Smith Is Entitled to Summary Judgment</u>**

Plaintiff's lawsuit against Smith revolves around Smith's use of pepper spray against him.  Plaintiff originally claimed that Smith should never have sprayed him.  At deposition, he objected that inmate Frison was also not sprayed.  And in his opposition papers, he raised the new theory that Smith's spraying him for 7 to 10 seconds, rather than 1 to 2 seconds, was an Eighth Amendment violation.[5]

---

[5]   The undersigned recommends that Plaintiff's new theory, that he was sprayed for 7 to 10 seconds, be disregarded as both untimely and inconsistent with the record.  <u>See</u> <u>Coleman v. Quaker Oats Co.</u>, 232 F.3d 1271, 1292 (9th Cir. 2000) ("[A] new theory of liability at the summary judgment stage would prejudice the defendant who faces

1    The use of pepper spray "may be reasonable as a general
2  policy to bring an arrestee under control, but in a situation in
3  which an arrestee surrenders and is rendered helpless, any reason-
4  able officer would know that a continued use of the weapon or a
5  refusal without cause to alleviate its harmful effects constitutes
6  excessive force." <u>LaLonde v. County of Riverside</u>, 204 F.3d 947, 961
7  (9th Cir. 2000); <u>see also</u> <u>Headwaters Forest Def.</u> v. <u>County of</u>
8  <u>Humboldt</u>, 276 F.3d 1125, 1131 (9th Cir. 2002) (holding repeated
9  spraying of passive protestors constituted excessive use of force
10 when the officers had control over the protestors).

11   Here, the undisputed evidence demonstrates that Smith showed
12 considerable restraint and sprayed Plaintiff only after Smith had
13 ordered the combatants to lie on the grounds, both combatants
14 refused the order and instead crouched on the ground, and Plaintiff
15 lunged at inmate Frison.  Plaintiff does not dispute that Smith

16

17 _____

18   (contd.)
   different burdens and defenses under this second theory of
   liability.") (citations omitted).  The Court's obligation to read
19 the pleadings liberally in *pro se* cases extends to facts actually
   contained in the pleadings and does not grant a *pro se* plaintiff
20 free rein to ambush the opposition with new facts and theories as he
   wishes.  In this case, the "7 to 10 second" allegation appeared for
   the first time, since July, 06 2009, in an opposition to summary
21 judgment. Plaintiff never mentioned it in his deposition and has
   never indicated that he disputed the duration he was sprayed.  His
22 only indication has been that he took umbrage at being sprayed in
   the first place.  Although the Court must construe pleadings
   liberally, "[p]ro se litigants must follow the same rules of
23 procedure that govern other litigants," <u>King v. Atiyeh</u>, 814 F.2d
   565, 567 (9th Cir. 1987), which in this case means requiring
24 Plaintiff to properly plead factual allegations and preventing him
   from ambushing Defendants as he pleases.   See <u>Pickern v. Pier 1</u>
   <u>Imports (U.S.), Inc.</u>, 457 F.3d 963, 968-69 (9th Cir. 2006) (refusing
25 to allow the plaintiff to advance new theories "presented for the
   first time in [the plaintiff's] opposition to summary judgment");
26 <u>Wasco Prods., Inc. v. Southwall Techs., Inc.</u>, 435 F.3d 989, 992 (9th
   Cir. 2006) ("Simply put, summary judgment is not a procedural second
27 chance to flesh out inadequate pleadings.") (internal quotations
   omitted); <u>Ortiz v. Lopez</u>, 688 F. Supp. 2d 1072, 1082 (E.D. Cal.
28 2010) ("[A] plaintiff cannot oppose summary judgment based on a new
   theory of liability because it would essentially blind side the
   defendant with a new legal issue after the bulk of discovery has
   likely been completed.").

09CV1463

1  sprayed him <u>one</u> time to cease his forward lunge.[6]  The spray had its

2  desired effect, as Plaintiff ceased his forward attack and stumbled

3  backwards.

4        Addressing the remaining <u>Hudson</u> factors, there is no evidence

5  that Plaintiff suffered injury, the need for the use of force was

6  high because Plaintiff was in the midst of lunging at Frison, and

7  the low level of force used was reasonable given Plaintiff's

8  impending attack.

9        Ultimately, the evidence that Smith used excessive force

10 against Plaintiff is not "woefully sparse"; it is nonexistent.

11 There is no dispute of fact whether the force used by Smith was

12 restrained and designed to restore order; it was.  As a result,

13 Smith's use of force was reasonable and lawful, and he is entitled

14 to summary judgment.

15        **3.   <u>Ponce is Entitled to Summary Judgment</u>**

16        Plaintiff alleges in his Complaint that Ponce was involved in

17 beating him.[7]  However, at deposition, Plaintiff admitted that this

18 allegation was pure conjecture, based on his belief that it was

19 "common sense" that Ponce "flopped" on him since he was the biggest

20 officer on the yard.  (Doc. No. 39-3 at 29.)  Plaintiff then

21 contradicted himself when he admitted that he never saw Ponce or

22 heard his voice during the incident, and he admitted that Ponce

23 never laid a hand on him during the fight or its aftermath.  (<u>Id.</u> at

24 _____

25 [6]    Even if true, the Fact that inmate Frison was <u>not</u> sprayed is
     irrelevant.  The undersigned's focus is properly on <u>Plaintiff's</u>
     actions and the reasonableness of the force used in response
26    thereto.

27 [7]    For the same reasons stated in footnote 5, the undersigned
     recommends that Plaintiff's new theory of liability, that he should
     have been given a faster opportunity to rinse the pepper spray off
28    his face, be disregarded.  This new theory appears for the first
     time in Plaintiff's opposition to Defendants' summary judgment
     motion.

09CV1463

28-30.)   For his part, Ponce avers that he was not involved in restraining Plaintiff and used no force on him. (Doc. No. 39-5 at 2.)   He merely appeared on-scene shortly before Plaintiff was handcuffed and escorted Plaintiff away from the scene without using any force.  (Id.)  Plaintiff's self-contradicted belief notwith-standing, the record simply contains no evidence that Ponce was involved in the alleged beating in any way or that he used any force whatsoever on Plaintiff.

At deposition, Plaintiff further alleged that Ponce falsified his report to protect his friend, Jones. (Id. at 28.)   Specifi-cally, Ponce allegedly wrote in his report that he (Ponce) escorted Plaintiff when in fact Jones escorted Plaintiff. (Id.)  Not only does this allegation not make sense, it is not an act that violates the Eighth Amendment.

First, this allegation makes no sense because nothing happened to Plaintiff when he was escorted. (Doc. No. 48-2 at 14 ("Q:  And when you were escorted to the program office, the escorting officer taunted you, but he didn't harm you in any way, did he?  A:  Well, no.  He made threats if I spitted [sic] on him. I was trying to spit the pepper spray out of my mouth and stuff like that.").)   It is illogical that Ponce would falsify a report to protect Jones when nothing happened.

Second, falsification of a report, even if true, is not an act that violates the Eighth Amendment.  That Amendment is violated by "unnecessary and wanton infliction of pain," Hudson v. McMillian, 503 U.S. 1, 5 (1992), such as when the conditions of an inmate's confinement are inhumane, Farmer v. Brennan, 511 U.S. 825, 832 (1994).  It is inconceivable how the act of falsifying a report in

1   the manner Plaintiff claims violates the Eighth Amendment's
2   proscription against cruel and unusual punishment.

3          Based on the above, there is no dispute of fact that Ponce
4   violated Plaintiff's Eighth Amendment rights; he did not. Ponce is
5   entitled to summary judgment as a result.

6          **4.   Spence is Entitled to Summary Judgment**

7          Plaintiff's lawsuit against Spence is based solely on his
8   status as the supervisor who oversaw the immediate investigation of
9   the fight and the officers' use of force.[8]

10         Supervisors are only personally liable for damages under
11  42 U.S.C. § 1983 when the evidence shows that they participated in,
12  directed, or knew of the alleged constitutional violations, and
13  failed to intervene to prevent them. <u>Taylor v. List</u>, 880 F.2d 1040,
14  1045 (9th Cir. 1989). "[D]irect, personal participation is not
15  necessary to establish liability for a constitutional violation."
16  <u>al-Kidd v. Ashcroft</u>, 580 F.3d 949, 965 (9th Cir. 2009) (quoting <u>Kwai
17  Fun Wong v. U.S. INS</u>, 373 F.3d 952, 966 (9th Cir. 2004)), *cert.*
18  *granted on other grounds,* 79 U.S.L.W. 3244 (U.S. Oct. 18, 2010)
19  (questions presented available at http://www.supremecourt.gov/qp/
20  10-00098qp.pdf). "Supervisors can be held liable for the actions of
21  their subordinates (1) for setting in motion a series of acts by
22  others, or knowingly refusing to terminate a series of acts by
23  others, which they knew or reasonably should have known would cause
24  others to inflict constitutional injury; (2) for culpable action or
25  inaction in training, supervision, or control of subordinates; (3)

26

27  _____

[8]    For the same reasons stated in footnote 5, the undersigned
28     recommends that Plaintiff's brand new theory of liability, that he
       should have been given a faster opportunity to rinse the pepper
       spray off his face, be disregarded, as it appears for the first time
       in Plaintiff's opposition to Defendants' motion.

1   for acquiescence in the constitutional deprivation by subordinates;

2   or (4) for conduct that shows a 'reckless or callous indifference to

3   the rights of others.'"   Id. (quoting Larez v. City of Los Angeles,

4   946 F.2d 630, 646 (9th Cir. 1991)).   "Any one of these bases will

5   suffice to establish the personal involvement of the defendant in

6   the constitutional violation."   Id.

7        The record is completely deficient of any evidence - or even

8   an allegation - that Spence personally participated in the use of

9   force against Plaintiff at any time.   There is no evidence whatso-

10  ever that Spence was even present when Plaintiff claims he was

11  beaten. (Doc. No. 39-3 at 22 ("Q: . . . .  Was Lieutenant Spence

12  present physically when you claim you were beaten by the officers?

13  A:  Not that I recall.").)

14       Nor is there any evidence that Spence set forth in motion the

15  events that led to Plaintiff's alleged beating.   Indeed, Plaintiff

16  himself set those events in motion when he fought Frison, refused to

17  lie on the ground, and lunged at Frison.   Plaintiff and Frison, not

18  Spence, were responsible for setting into motion the events that led

19  Smith to spray Plaintiff and the other officers to take him into

20  custody.

21       Nor is there any evidence that Spence acquiesced to the

22  alleged constitutional deprivation Plaintiff suffered.   (Cf. Doc.

23  No. 39-4 at 2 ("I was in the program office when I heard the yard

24  alarm.   I immediately went outside, rounded the corner, and saw

25  inmate Dukes, who was already handcuffed, being pulled to his feet.

26  I did not see anyone use any force on Dukes.") (emphasis added).)

27  Because there is no evidence that he witnessed the fight or

28  Plaintiff being taken into custody, there is no reason to believe he

1    should have known that the officers' account of the events differed

2    from how those events actually transpired, as Plaintiff baldy

3    asserts he must have.   Thus, there is no evidence that he acquiesced

4    to any constitutional violation by submitting a report he knew was

5    false.   Indeed, in his opposition, Plaintiff even "agrees fully with

6    Defendants [sic] statement of undisputed facts," (Doc. No. 45 at 5),

7    which avers that "[t]here was no 'cover up' of any facts," and that

8    "Spence's report of the incident is simply a synopsis of the events

9    described by the officers at the scene," (Doc. No. 39-2 at 4).

10       Nor is there any evidence – or even an allegation – that

11   Spence displayed "culpable action or inaction in training, supervi-

12   sion, or control of subordinates."   There is nothing in the record

13   that indicates Spence's supervision or poor training of officers led

14   to the alleged use of excessive force in the first place.

15       Finally, Spence's conduct falls far short of demonstrating a

16   "reckless or callous indifference to the rights of others."   No

17   credible evidence exists that his conduct showed <u>any</u> indifference to

18   Plaintiff's rights, much less a reckless or callous one.

19       Ultimately, there is no dispute of fact that Spence violated

20   Plaintiff's Eighth Amendment rights; he did not.   Spence is entitled

21   to summary judgment as a result.

22   **B.**      <u>**Defendants Are Entitled to Qualified Immunity**</u>

23       Defendants claim they are entitled to summary judgment

24   because they are immune from suit.   Because Plaintiff cannot make

25   out a constitutional violation against any of them, the undersigned

26   agrees.

27

28

1

### 1.   Qualified Immunity Legal Standard

Government officials are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Liston v. County of Riverside, 120 F.3d 965, 975 (9th Cir. 1997) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The defense of qualified immunity allows for errors in judgment and protects "all but the plainly incompetent or those who knowingly violate the law. . . . [I]f officers of reasonable competence could disagree [whether a specific action was constitu-tional], immunity should be recognized." Malley v. Briggs, 475 U.S. 335, 341 (1986). Qualified immunity balances the interests of "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reason-ably." Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 815 (2009). The Court must determine "whether, in light of clearly established principles governing the conduct in question, the officer objectively could have believed that his conduct was lawful." Watkins v. City of Oakland, 145 F.3d 1087, 1092 (9th Cir. 1998).

The Court engages in a two-part inquiry: (1) whether the facts shown "make out a violation of a constitutional right," and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson, 129 S. Ct. at 815-16. The Court may consider these steps in any order it wishes. Id. at 818.

1        If the Court first considers whether the facts shown make out

2  a violation of a constitutional right, "there is no necessity for

3  further  inquiries  concerning  qualified  immunity"  if  the  Court

4  determines  that  no  constitutional  violation  has  been  made  out.

5  Saucier v. Katz, 533 U.S. 194, 201 (2001), *overruled on other*

6  *grounds by* Pearson, 129 S. Ct. at 818.

7        A constitutional right is clearly established when "it would

8  be clear to a reasonable officer that his conduct was unlawful in

9  the  situation  he  confronted."  Id. at 202.   The  issue  becomes

10  whether  the  law  officer  could  have  reasonably  believed  that  the

11  officer's conduct was lawful.   Generally, this is a mixed question

12  of  law  and  fact  requiring  a  determination  regarding  whether  an

13  objectively  reasonable  officer  would  have  believed  that  exigent

14  circumstances  existed  to  justify  the  force  used  in  light  of  the

15  information possessed by defendant.   Id. at 205-06.

16        Any genuine dispute of material fact concerning the underly-

17  ing facts of what the officer knew or what the officer did are

18  questions of fact for the jury.   Acosta v. City and County of San

19  Francisco, 83 F.3d 1143, 1149 (9th Cir. 1996), citing Sinaloa Lake

20  Owners Ass'n v. City of Simi Valley, 70 F.3d 1095, 1099 (9th Cir.

21  1995).   However,  where  the  essential  facts  are  undisputed,  the

22  reasonableness of the officer's actions is properly determined by

23  the court.   Sinaloa Lake Owners Ass'n, 70 F.3d at 1099.

24        **2.   Defendants Are Entitled to Qualified Immunity**

25        The  undersigned  begins  with  Saucier's  first  prong:   whether

26  the  undisputed  facts,  viewed  in  the  light  most  favorable  to

27  Plaintiff, make out a constitutional violation.

28

1           **a.**   <u>**Smith**</u>

2      The totality of plaintiff's own pleadings and facts against

3 Smith establish that Smith sprayed Plaintiff with pepper spray only

4 one time after Plaintiff (1) was involved in a fist fight in prison,

5 (2) refused to stop fighting when ordered, (3) refused to lie on the

6 ground and instead squatted, and (4) lunged toward inmate Frison to

7 continue the fight.   These facts establish a reasonable and

8 proportional use of force, not a sadistic or malicious infliction of

9 force that violates the Eighth Amendment.   As further explained

10 above, Plaintiff fails to make out a constitutional violation

11 against Smith.

12           **b.**   <u>**Ponce**</u>

13      As Plaintiff admitted in his deposition, the extent of

14 Ponce's alleged acts against him involved only falsifying a report

15 to state that he (Ponce), not Jones, escorted Plaintiff from the

16 fight scene.   Because the act of falsifying a report fails to

17 inflict pain in an unnecessary and wanton manner, or create inhumane

18 conditions of confinement, Plaintiff fails to make out a constitu-

19 tional violation against Ponce.

20           **c.**   <u>**Spence**</u>

21      As Plaintiff admitted in his deposition, his suit against

22 Spence was based on his status as the supervisor who submitted an

23 alleged falsified report of the fight and subsequent use of force,

24 and for his failure to prevent the officers' falsification of their

25 reports.

26      "In a § 1983 suit or a *Bivens* action--where masters do not

27 answer for the torts of their servants--the term 'supervisory

28 liability' is a misnomer.   Absent vicarious liability, each

09CV1463

1   Government official, his or her title notwithstanding, is only
2   liable for his or her own misconduct.  In the context of determining
3   whether there is a violation of clearly established right to
4   overcome qualified immunity, purpose rather than knowledge is
5   required to impose *Bivens* liability on the subordinate for unconsti-
6   tutional discrimination; the same holds true for an official charged
7   with violations arising from his or her superintendent responsibili-
8   ties."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

9        Plaintiff's bare allegations notwithstanding, there is a
10  complete dearth of evidence that any of the officers falsified their
11  reports or that Spence knew about the alleged falsifications.  The
12  officers' reports show that their use of chemical agents, physical
13  force, and batons was well-documented.  (See Doc. No. 1 at 14-27.)
14  Beyond asserting that the reports were falsified, Plaintiff fails to
15  explain how any of the officer falsified their reports.  Indeed, in
16  his opposition, Plaintiff contradicts himself when he states that he
17  "agrees fully with Defendants [sic] statement of undisputed facts,"
18  (Doc. No. 45 at 5), which avers that "[t]here was no 'cover up' of
19  any facts," and that "Spence's report of the incident is simply a
20  synopsis of the events described by the officers at the scene."
21  (Doc. No. 39-2 at 4.)  If there was no cover-up, Spence logically
22  could not have acquiesced to any cover-up.  There simply are no
23  facts that support Plaintiff's contention that Spence violated the
24  Eighth Amendment.  Plaintiff fails to make out a constitutional
25  violation against Spence.
26
27
28

09CV1463

1              **d.**    **The Undersigned's Immunity Inquiry Ends At the First Prong**

2

3         Because Plaintiff has failed to make out a constitutional

4 violation against any of the Defendants, the undersigned's inquiry

5 ends there. After all, it would be futile to attempt to determine

6 whether a constitutional right was clearly established when no such

7 violation exists in the first place. See <u>Saucier</u>, 533 U.S. at 201

8 ("If no constitutional right would have been violated were the

9 allegations established, there is no necessity for further inquiries

10 concerning qualified immunity."); see also <u>Tennison v. City & County</u>

11 <u>of San Francisco</u>, 570 F.3d 1078, 1092 & n.7 (9th Cir. 2009) (same;

12 recognizing <u>Pearson</u>'s partial overruling of <u>Saucier</u>); <u>Reedy v.</u>

13 <u>Evanson</u>, 615 F.3d 197, 223-24 & n.36 (3d Cir. 2010) (same).

14         Based on the foregoing, all three Defendants are entitled to

15 qualified immunity and are immune from suit. The undersigned

16 therefore recommends that Defendants' motion be granted on this

17 additional basis.

18                **III.**    <u>**CONCLUSION**</u>

19         Based on the foregoing, the undersigned RECOMMENDS that

20 Defendants' Motion for Summary Judgment be GRANTED.

21         This report and recommendation of the undersigned Magistrate

22 Judge is submitted to the United States District Judge assigned to

23 this case, pursuant to the provision of 28 U.S.C. Section 636(b)(1).

24         IT IS ORDERED that no later than <u>March 4, 2011</u>, any party to

25 this action may file written objections with the Court and serve a

26 copy on all parties. The document should be captioned "Objections

27 to Report and Recommendation."

28

09CV1463

1        IT IS FURTHER ORDERED that any reply to the objections shall

2    be filed with the Court and served on all parties no later than

3    <u>March 18, 2011</u>.   The parties are advised that failure to file

4    objections within the specified time may waive the right to raise

5    those objections on appeal of the Court's order.   <u>Martinez v. Ylst</u>,

6    951 F.2d 1153, 1156 (9th Cir. 1991).

7    DATED:   February 4, 2011

8

9                           _____

10                          Hon. William V. Gallo
                            U.S. Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

09CV1463